UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TENTANDTABLE.COM, LLC
and
ZOOM BLOWERS, LLC
3336 Bailey Avenue
Buffalo, New York 14215

|  |  |
|---|---|
| Plaintiffs, | **COMPLAINT** |
| v. | Docket No. |
| MOHAMMED ALJIBOURI<br>749 Wurlitzer Drive<br>North Tonawanda, New York 14120 | JURY TRIAL DEMANDED |

JASON CHEBAT
155 Chandler Street, Suite 1
Buffalo, New York 14207

BOUNCYHOP.COM, LLC
155 Chandler Street, Suite 1
Buffalo, New York 14207

CHRISTOPHER GERRID
155 Chandler Street, Suite 1
Buffalo, New York 14207

MICHAEL GROCHALA
155 Chandler Street, Suite 1
Buffalo, New York 14207

PAUL MICHAEL
155 Chandler Street, Suite 1
Buffalo, New York 14207

DHIYAA ALJIBOURI
1507 Kingston Avenue
North Tonawanda, New York 14120

US EXPRESS LOGISTICS, LLC
209 E. Felton Street
North Tonawanda, New York 14120

JOHN DOE
XXX, LLC

                                    Defendants.
_____

The Plaintiffs, by and through their counsel, WEBSTER SZANYI LLP, hereby submit this Complaint against the Defendants, jointly and severally, as follows:

1.      The Plaintiff TentandTable.com, LLC is a company duly organized and existing under the laws of the State of New York and doing business in Erie County with a principal place of business at 3336 Bailey Avenue, Buffalo, New York.

2.      The Plaintiff Zoom Blowers, LLC is a company duly organized and existing under the laws of the State of New York and doing business in Erie County with a principal place of business at 3336 Bailey Avenue, Buffalo, New York.

3.      The Defendant Mohammed Aljibouri is an individual residing at and/or conducting business at the above address and conducting business within the jurisdiction of the Western District of New York.

4.      The Defendant Michael Grochala is an individual residing at and/or conducting business at the above address and conducting business within the jurisdiction of the Western District of New York.

5.      The Defendant Christopher Gerrid is an individual residing at and/or conducting business at the above address and conducting business within the jurisdiction of the Western District of New York

6.      The Defendant Jason Chebat is an individual residing at and/or conducting business at the above address and conducting business within the jurisdiction of the Western District of New York.

7.      The Defendant Paul Michael is an individual residing at and/or conducting business at the above address and conducting business within the jurisdiction of the Western District of New York.

2

8.     The Defendant Bouncyhop.com, LLC is a Company organized under the laws of the State of Nevada, and conducting business within the jurisdiction of the Western District of New York, with a principal place of business in Erie County at 155 Chandler Street, Buffalo, New York.

9.     The Defendant Dhiyaa Aljibouri is an individual residing at and/or conducting business at the above address and conducting business within the jurisdiction of the Western District of New York

10.     The Defendant US Express Logistics, LLC is a Company organized under the laws of the State of New York, and conducting business within the jurisdiction of the Western District of New York, with a principal place of business in Niagara County at 209 E. Felton Street, North Tonawanda, New York and/or 1507 Kingston Avenue, North Tonawanda, New York.

11.     The Defendant, named herein as John Doe, is meant to represent currently unknown individuals who may also have liability to the Plaintiffs and who have acted in concert and as co-conspirators with the Defendants. Plaintiffs reserve the right to amend the Complaint in order to include any additionally liable parties.

12.     The Defendant, named herein as XXX, LLC is meant to represent currently unknown corporate or company entities who may also have liability to the Plaintiffs and who have acted in concert and as co-conspirators with the Defendants. Plaintiffs reserve the right to amend the Complaint in order to include any additionally liable parties.

## JURISDICTION AND VENUE

13.     Jurisdiction over this case exists pursuant to 28 U.S.C § 1331, 15 U.S.C. § 1125, and §43(a) of the Lanham Act  with respect to the federal statutory claims and

questions as herein asserted. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the remaining claims alleged as they relate directly to, and arise out of, the same controversy and facts.   The amount in controversy exceeds Seventy Five Thousand Dollars ($75,000) exclusive of interest and costs.

14.    The Court has personal jurisdiction over all Defendants as they regularly do business and solicit business in New York, and/or reside in New York and in this judicial district.  As such, each Defendant has minimum contacts within this forum.

15.    Venue is appropriate in the United States District Court for the Western District of New York under 28 U.S.C. 1391, as the known Defendants reside in this jurisdiction and a substantial portion of the unlawful conduct giving rise to the Plaintiffs' claims have taken place within the jurisdiction of the Western District of New York.

**ALLEGATIONS COMMON TO ALL OF PLAINTIFFS' CAUSES OF ACTION**

16.    Plaintiffs operate a business which, in part, sells, delivers and distributes various inflatable products such as bounce houses and water slides, and appropriate air blowers used to inflate such products.  Plaintiffs also sell party tents, pole tents, banquet tents with associated tables and chairs.

17.    Plaintiffs have been in business for over twenty five years and have taken great effort and made significant investment of time and resources to build their brands and proprietary place in the market as a leader in quality products and customer service.

18.    As part of the Plaintiffs' business, they have exclusive trademark rights to various products and names in the commercial inflatable market.   These trademarks include, but are not limited to "Zoom Blowers", "Pogo" inflatables and "PartyTentsDirect.com".  Exhibit 1.

19.    Also, Plaintiffs created, introduced and have long marketed a black and yellow housing for an air blower and submitted a trademark registration application to the US Trademark Office, for the yellow and black color scheme. Plaintiffs' color scheme is known in the industry to be unique and is exemplified by the image found at Exhibit 2.

20.    Plaintiffs' blowers are designed with distinctive yellow and black colors, and have been sold in interstate commerce for many years.  Plaintiffs' blowers have become known in the market as a result of their distinctive appearance and have acquired secondary meaning through their extensive and continuous use.

21.    Plaintiffs have established valuable trade dress rights and associated goodwill by its extensive and continuous use of their unique configuration.

22.    Plaintiffs have used these marks and designs in interstate commerce and Plaintiffs' marks serve to identify the source of the goods and products.

23.    Therefore, any person or entity selling and distributing products bearing these trademarks without the Plaintiffs' express permission is in violation of the Plaintiffs' rights.

24.    Defendant Mohammed Aljibouri ("ALJIBOURI") is a former employee of Plaintiff, Tentandtable.com, LLC. ALJIBOURI worked for Tentandtable.com, LLC from approximately October 13, 2019 to November 5, 2021, when he abruptly quit his employment and communicated his termination by text message.

25.    While employed, ALJIBOURI was a warehouse supervisor in control of the Plaintiffs' shipping, receiving and inventory.

26.    ALJIBOURI was in a leadership role with Tentandtable.com, LLC and was trusted with confidential, proprietary and financial information regarding the Plaintiffs' products and operations.

27.    While employed, ALJIBOURI engaged the Plaintiffs with "Ware2Go" which is a nationwide system of warehouses that provides storage, shipping and receiving of merchant goods in order to streamline fulfillment of orders across the country.

28.    ALJIBOURI had access to the Ware2Go system and through use of his login credentials could manage inventory and direct deliveries as needed.

29.    After ALJIBOURI quit his employment, the Plaintiffs conducted various inventory reviews and noticed discrepancies and irregularities that caused alarm.

30.    It became apparent that ALJIBOURI was making deliveries of Plaintiffs' goods and entering orders that were not associated with customers of the Plaintiffs.

31.    Plaintiffs reviewed orders placed by ALJIBOURI, and found no corresponding customer of the Plaintiffs, nor payment to the Plaintiffs.

32.    Attached hereto as Exhibit 3 is a spreadsheet of orders placed under the login of ALJIBOURI prior to his quitting Plaintiffs' employment.  Beyond the use of ALJIBOURI'S login credentials, Plaintiffs were able to identify the IP internet address where the orders were placed, and confirmed that they originated from North Tonawanda, New York where ALJIBOURI resides.  After he quit his employment with Tentandtable.com, LLC, ALJIBOURI also made other orders, signing in as a Tentandtable.com, LLC representative user kevinc@tentandtable.com. (Exhibit 3, Column C, Row 45).   Plaintiffs were also able to identify the IP address location of this order as also coming from North Tonawanda, New York where ALJIBOURI resides.

33.    Plaintiffs are not aware of any legitimate account user who would have signed in from North Tonawanda where ALJIBOURI resides.

34.    Therefore, at minimum and with the information currently available, it is clear that ALJIBOURI converted, stole and/or sold for his own benefit, the products listed on the attached Exhibit 3.

35.    Plaintiffs also uncovered evidence leading them to reasonably believe that ALJIBOURI stole and converted Plaintiffs' property from its Clyde Avenue warehouse where ALJIBOURI was working.

36.    Upon information and belief, Defendant US EXPRESS LOGISTICS, LLC ("LOGISTICS")  is in the business of trucking, shipping and transporting goods.  It is also believed that LOGISTICS is owned, operated and managed by the relative, brother and co-conspirators of ALJIBOURI, to wit: Defendant Dhiyaa Aljibouri ("DHIYAA").

37.    Attached as Exhibit 4 is a delivery slip and LOGISTICS shipping invoice for products believed to have been stolen from the Plaintiffs.  It is believed that ALJIBOURI, LOGISTICS, DHIYAA and other Defendants loaded products stolen and/or converted from Plaintiffs onto LOGISTICS and DHIYAA'S trucks and shipped those products across state lines to be used and sold in interstate commerce.

38.    ALJIBOURI perpetrated a scheme to defraud the Plaintiffs and conspired with others in order to steal Plaintiffs' products and resell them for their own profit.

39.    Plaintiffs are aware ALJIBOURI and Defendant Jason Chebat ("CHEBAT") have organized and begun to operate Defendant BOUNCYHOP.COM LLC ("BOUNCYHOP")  to illegally facilitate their conspiracy and sell the stolen and converted goods of the Plaintiffs.

40.     Attached as Exhibit 5 is confirmation from the Nevada Secretary of State confirming the formation of BOUNCYHOP with CHEBAT and ALJIBOURI as members and managers.  This entity was formed in August 2021, which is believed to be during a time Defendants, jointly and severally, were stealing and diverting Plaintiffs' products for their own benefit.

41.     Defendants, jointly and severally, and through BOUNCYHOP have offered Plaintiffs' products for sale in interstate commerce, made sales and transported these goods through interstate commerce.

42.     Attached hereto as Exhibit 6 are images and offerings found publicly for sale on the internet through BOUNCYHOP.

43.     Defendants   Christopher   Gerrid   ("GERRID"),   Michael   Grochala ("GROCHALA") and Paul Michael ("MICHAEL") represent themselves as agents and salespeople of BOUNCYHOP and are believed to be part of the conspiracy and illegal acts perpetrated against the Plaintiffs.

44.     The items listed for sale include products bearing the Plaintiffs' names and trademarks including Tentandtable.com, Zoom Blowers, Pogo Bounce House and Partytentsdirect.com.  The sale of these products by Defendants, jointly and severally, is unauthorized, illegal and causing continuing damages to the Plaintiffs.

45.     Upon uncovering the scheme of the Defendants, and finding Plaintiffs' products for sale, Plaintiffs arranged for purchases to further identify and confirm the fraudulent actions of the Defendants.

46.     Plaintiffs monitored the purchase of products offered by BOUNCYHOP through buyer, Glenn Cook.

47.     Attached hereto as Exhibit 7 is a confirmation email from BOUNCYHOP to Glenn Cook dated December 8, 2021 confirming his purchase of a 2 HP air blower.

48.     Mr. Cook paid Two Hundred Twenty Four Dollars and sixty nine cents ($224.69) to BOUNCYHOP for the blower to be shipped through interstate commerce to his address in Mississippi.

49.     Attached hereto as Exhibit 8 is a confirmation email from BOUNCYHOP to Glenn Cook dated December 15, 2021 confirming his purchase of a 2 HP air blower, as well as a twelve foot inflatable water slide.

50.     Mr. Cook paid One Thousand One Hundred Twelve Dollars and forty five cents ($1,12.45) to BOUNCYHOP for the blower and water slide to be shipped through interstate commerce to his address in Mississippi.

51.     Attached hereto as Exhibit 9 are photographs of the Zoom Blowers and Pogo water slide that were purchased from, and delivered by, Defendants, jointly and severally.

52.     The products shown in Exhibit 9 are the Plaintiffs' property, and part of the stolen merchandise acquired and converted by Defendants, and bear the Plaintiffs' trademarks.

53.     Plaintiffs also monitored the purchase and sale of products offered by BOUNCYHOP through buyer, Michael Bacile.

54.     Attached hereto as Exhibit 10 is a confirmation from BOUNCYHOP to Mr. Bacile confirming his January 2022 purchase of a 20' x 20' Tent Sidewall Kit.

55.     Mr. Bacile paid Five Hundred Forty One Dollars and twenty four cents ($541.24) to BOUNCYHOP for the Sidewall Kit to be shipped through interstate commerce to his address in Texas.

56.    Attached hereto as Exhibit 11 are photographs of the products that were purchased from, and delivered by, Defendants, jointly and severally.

57.    The products shown in Exhibit 11 are the Plaintiffs' property, and believed to be part of the stolen merchandise acquired and converted by Defendants, and bear the Plaintiffs' trademarks.   The box delivered by BOUNCYHOP clearly shows the Plaintiffs name and trademark "TENTANDTABLE.COM."

58.    Upon information and belief, Defendants have made numerous and repeated sales of the Plaintiffs' products through theft and manipulation of Plaintiffs' Ware2Go system.

59.    The Defendants have shown that they intend to continue their illegal selling, marketing and otherwise retaining the Plaintiffs' products.

**First Count [Lanham Act Violation(s)]**

60.    The Plaintiffs repeat, reiterate, reallege, and incorporate by reference paragraphs 1 through 59, both inclusive as if fully set forth herein.

61.    The marks Zoom Blowers, Pogo Bounce House and Partytentsdirect.com (the "Trademarks") are owned by the Plaintiffs Zoom Blowers, LLC and Tentandtable.com, LLC, respectively and have been constantly maintained by the Plaintiffs since their registration with the United States Patent and Trademark Office.

62.    The registration of the Trademarks is *prima facie* evidence of Plaintiffs' ownership, pursuant to The Lanham Act.

63.    Plaintiffs own the trademarks and Plaintiffs have never consented to the use of the Trademarks to the Defendants.

64.    Defendants, jointly and severally, in connection with goods, services, advertisement, dissemination of information, in interstate commerce, carried out and continue to carry out a scheme to defraud and otherwise have used, in violation of The Lanham Act, in commerce, the names, terms, symbols, devices, and combinations thereof through websites and internet offerings for sale.

65.    Defendants have used Plaintiffs' protected names unlawfully and for their own benefit and to Plaintiffs' detriment.

66.    The false designation, misleading descriptions of fact, and false and misleading representations of fact by the Defendants, are likely to cause confusion, mistake, and deception; that the conduct of the Defendants misrepresents the nature, characteristics, quality, and geographic origin of Defendants' services and commercial activities to the Plaintiffs' detriment.

67.    In addition to the foregoing, the Defendants' joint and several wrongful conduct in utilizing Plaintiffs' names and marks in commerce creates the likelihood of confusion and was, and is, calculated to cause confusion, cause mistake, and to deceive the general public with respect to Plaintiffs' products.

68.    The Defendants' conduct is *prima facie* a false description of Plaintiffs' products and services prohibited by The Lanham Act, and misrepresents Defendants' commercial activities to the Plaintiffs' detriment.

69.    Further, the Defendants, by and through their joint and several wrongful conduct, and as a result of their violation of The Lanham Act,

        a.    have made misleading and false factual representations of the nature of products and services;

11

b.    the misleading and false representations are used in commerce and in regard to products and services;

c.    the Defendants have made the false and misleading statements in commercial advertising and publications to promote and further their own business and personal interests;

d.    the Defendants have libeled, slandered, defamed and otherwise caused injury and damage to the Plaintiffs as a result of improper usage of Plaintiffs' names and marks on Defendants' associated websites and internet marketing; and

e.    the Plaintiffs have suffered damages and injuries and reasonably believe that they will suffer further damages and injury from the Defendants' false and misleading representations; and other tortious acts.

70.    Based upon the foregoing, the Plaintiffs demand Judgment against the Defendants, jointly and severally, as follows:

a.    enjoining and restraining the Defendants from directly, or indirectly, utilizing the Plaintiffs' names, products, the Trademarks, Zoom Blowers, Pogo Bounce House, Tentandtable.com and Partytentsdirect.com, the yellow and black design of air blowers, or any similar variations of any such phrases, words names or designs similar to the Plaintiffs', and other use of Plaintiffs' Trademarks yet undiscovered;

b.    awarding the Plaintiffs compensatory and punitive damages;

c.      awarding the Plaintiffs costs of suit, including reasonable attorneys' fees; and

d.      Awarding such legal or equitable relief as the Court may deem proper.

## Second Count [Willful Violation of the Lanham Act]

71.     The Plaintiffs repeat, reiterate, reallege, and incorporate by reference paragraphs 1 through 70, both inclusive as if fully set forth herein.

72.     The Defendants' aforesaid use of Plaintiffs' names and trademarks was willful and was and is intended to cause actual confusion and said conduct is likely to continue to cause confusion, mistake, and deception as to the origin of Defendants' activities and as to the sponsorship or approval of Defendants' activities.

73.     The Defendants' aforesaid advertising and activities misrepresent the nature, characteristics, and qualities of their commercial activities.

74.     The aforesaid acts and conduct are in violation of 15 U.S.C. §1125(a)(1), and §1125(d).

75.     The Defendants have refused to cease and desist and abate from their unlawful acts, despite demand.

76.     The Plaintiffs have and will suffer irreparable damage and harm to its business, reputation, good will, business relationships, claims of liability and that the Plaintiffs' good name in the community will be harmed unless the Defendants are restrained and enjoined.  The Plaintiffs are without any adequate remedy at law.

77.     Based upon the foregoing, the Plaintiffs demand Judgment against the Defendants, jointly and severally, as follows:

a.     Enjoining and restraining the Defendants from directly, or indirectly, utilizing the Plaintiffs' names, products, Zoom Blowers, Pogo Bounce House, Tentandtable.com and Partytentsdirect.com, the yellow and black design of air blowers, or any similar variations of any such words or names similar to the Plaintiffs' name(s), and other use of Plaintiffs' trademarks yet undiscovered;

b.     Awarding the Plaintiffs compensatory and punitive damages;

c.     Awarding the Plaintiffs costs of suit, including reasonable attorneys' fees; and

d.     Awarding such legal or equitable relief as the Court may deem proper.

**Third Count [Racketeer Influenced Corrupt Organizations Act]**

78.     The Plaintiffs repeat, reiterate, reallege, and incorporate by reference paragraphs 1 through 77, both inclusive as if fully set forth herein.

79.     At all relevant times, there remains in full force and effect the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.A. §§ 1961 et seq. which provides a civil RICO cause of action at 18 U.S.C.A. § 1964(c).

80.     At all relevant times, there was in full force and effect in the United States of America certain statutes commonly referred to as the mail and wire fraud statutes, 18 U.S.C.A. §§ 1341, 1343 and 1346.

81.     These claims for relief are brought by the Plaintiffs in connection with and as a result of a scheme devised by Defendants to fraudulently transfer the assets of Plaintiffs for Defendants' own benefit and to the detriment of the Plaintiffs.

14

82.    The Plaintiffs are each a qualified "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

83.    Defendants ALJIBOURI, CHEBAT and DHIYAA are each "persons" within the meaning of 18 U.S.C.A. §§ 1961(3) and 1962(c) and (d).

84.    Defendant BOUNCYHOP is an "enterprise" within the meaning of 18 U.S.C.A. §§ 1961(4) and 1962(c) and (d).

85.    With respect to the conspiracy, illegal and fraudulent transfer of assets, ALJIBOURI and CHEBAT were each employed by or associated with BOUNCYHOP, an enterprise engaged in, and the activities of which affected, interstate commerce within the meaning of 18 U.S.C.A. § 1962(c) and (d).

86.    With respect to the conspiracy, illegal and fraudulent transfer of Plaintiffs' assets, ALJIBOURI and CHEBAT, along with the remaining Co-Defendants, conspired to, within the meaning of 18 U.S.C.A. § 1962(d) and did conduct or participate, directly and indirectly, in the conduct of BOUNCYHOP'S affairs in a fashion prohibited by 18 U.S.C. §1962(c) through a pattern of activity defined by 18 U.S.C. § 1961(1)(B) and (5), to wit: Multiple instances of mail fraud and wire fraud in violation of 18 U.S.C.A. §§ 1341 and 1343 through the sale, receipt of payment and transportation of Plaintiffs' products without permission.

87.    The Plaintiffs were each directly and distinctly injured by ALJIBOURI, CHEBAT, BOUNCYHOP and the Co-Defendants, jointly and severally, by reason of a violation of 18 U.S.C.A. §1962(c) and (d) committed by ALJIBOURI, CHEBAT and BOUNCYHOP.

88.     In August 2021 and prior, ALJIBOURI, CHEBAT, and BOUNCYHOP devised and perpetrated a scheme to create an enterprise by creating BOUNCYHOP and organizing same as an LLC in the State of Nevada.

89.     ALJIBOURI, CHEBAT, DHIYAA and BOUNCYHOP knowingly committed multiple acts in furtherance of their enterprise through transportation of Plaintiffs' products in interstate commerce, and mail and wire fraud, the common thread running through each being the purposeful and fraudulent transfer of Plaintiffs' assets for their own benefit and with direct injury to the Plaintiffs.

90.     The Plaintiffs have standing to assert this claim, which is stated pursuant to §1962 (a), (c) and (d).

### Predicate Acts:  Pattern of Racketeering

91.     The Defendants have committed their predicate acts injuring the Plaintiffs through the conversion of property, theft and movement of stolen property, mail and wire fraud in receiving and fulfilling orders for and receipt of money for stolen goods through wire fraud, transportation of stolen property through interstate commerce, since at least 2021.

92.     The scheme to defraud the Plaintiffs for which there was use of mail and wire transactions involved the intentional appropriation of Plaintiffs' assets to Defendants ALJIBOURI, CHEBAT, DHIYAA and BOUNCYHOP to the detriment of the Plaintiffs.  Implementation of the scheme involved affirmative misrepresentations, non-disclosure of material facts, fraudulent transfers and concealment of transfers.

93.     Additionally, upon information and belief Defendants ALJIBOURI, CHEBAT, DHIYAA, LOGISTICS and BOUNCYHOP knowingly transported stolen

property belonging to the Plaintiffs across state lines and effecting interstate commerce in violation of, at least, 18 U.S.C § 2314.

94.    The Defendants ALJIBOURI, CHEBAT, DHIYAA, LOGISTICS and BOUNCYHOP were and are knowingly participating in the conduct of the enterprise.

95.    The Plaintiffs suffered injury to their business and property as a consequence of these acts and the scheme to defraud.

96.    The Plaintiffs' damages include the lost product and profit thereon, dilution of their valuable and proprietary trademarks, damage to their reputation in the industry, and other damages, plus interest, attorneys' fees and costs incurred to date.

97.    Pursuant to the provision of 18 U.S.C.A. §1964(c), Plaintiffs' damages are to be trebled.

98.    That based upon the foregoing, the Plaintiffs demand Judgment against the Defendants, jointly and severally, as follows:

   a.    An award of treble damages for all damages of the Plaintiffs;

   b.    Enjoining and restraining the Defendants from directly, or indirectly, utilizing the Plaintiffs' names, products, Zoom Blowers, Pogo Bounce House, Tentandtable.com and Partytentsdirect.com, the yellow and black design of air blowers, or any similar variations of any such words, phrases, names or designs similar to the Plaintiffs' and other use of Plaintiffs' trademarks yet undiscovered;

   c.    Awarding the Plaintiffs compensatory and punitive damages;

   d.    Awarding the Plaintiffs costs of suit, including reasonable attorneys' fees; and

e.    Awarding such legal or equitable relief as the Court may deem proper.

**Fourth Count [Appointment of a Receiver over BOUNCYHOP]**

99.    The Plaintiffs repeat, reiterate, reallege, and incorporate by reference paragraphs 1 through 98, both inclusive as if fully set forth herein.

100.    Therefore, as a result of the egregious conduct of the Defendants, jointly and severally, and not yet knowing the full extent of the fraud, theft and damages inflicted upon the Plaintiffs, the Court must direct the immediate appointment of a Receiver over the Defendant BOUNCYHOP.

101.    Prior to resolution of all of Plaintiffs' claims, a Receiver is essential and mandated in order to prevent further waste, and prevent expenditures by Defendants that may be difficult to track and obtain.

102.    Wherefore, Plaintiffs demand the appointment of a Receiver in order to manage the affairs of BOUNCYHOP and prevent further damages being sustained by Plaintiffs.

**Fifth Count [Demand Accounting]**

103.    The Plaintiffs repeat, reiterate, reallege, and incorporate by reference paragraphs 1 through 102, both inclusive as if fully set forth herein.

104.    Plaintiffs further seek an accounting of the entire affairs of BOUNCYHOP since its inception in order to determine the full range of the Plaintiffs' damages and the full extent of the Defendants' fraudulent scheme.    An accounting is required and demanded in order for the Plaintiffs to know and recover the sums Defendants illegally

stole and resold, and determine what has been retained and diverted by the Defendants.

## Sixth Count [Unjust Enrichment]

105.    The Plaintiffs repeat, reiterate, reallege, and incorporate by reference paragraphs 1 through 104, both inclusive as if fully set forth herein.

106.    Defendants have improperly and illegally obtained and converted the materials, products, capital, goodwill and profits of the Plaintiffs.

107.    Defendants, jointly and severally, have continued to enjoy and benefit from the materials, products, capital, goodwill and profits of the Plaintiffs without returning just and valuable compensation.

108.    By reason of the foregoing, the Defendants, jointly and severally, have been unjustly enriched in a yet undetermined amount, but in an amount that is in excess of Seventy Five Thousand Dollars.

109.    That based upon the foregoing, the Plaintiffs demand Judgment against the Defendants, jointly and severally, as follows:

      a.    Enjoining and restraining the Defendants from directly, or indirectly, utilizing the Plaintiffs' names, products, Zoom Blowers, Pogo Bounce House, Tentandtable.com and Partytentsdirect.com, the yellow and black design of air blowers, or any similar variations of any such words or names similar to the Plaintiffs' name(s), and other use of Plaintiffs' other trademarks yet undiscovered;

      b.    Awarding the Plaintiffs compensatory and punitive damages;

c.     Awarding the Plaintiffs costs of suit, including reasonable attorneys' fees; and

d.     Awarding such legal or equitable relief as the Court may deem proper.

**Seventh Count [Piercing the Corporate Veil and Alter Ego Claims]**

110.    The Plaintiffs repeat, reiterate, reallege, and incorporate by reference paragraphs 1 through 109, both inclusive as if fully set forth herein.

111.    The actions of ALJIBOURI, CHEBAT, and other Defendants claiming a membership role in BOUNCYHOP were undertaken individually and in their respective roles as agents, officers and members of BOUNCYHOP.  Defendants' actions were undertaken for the dual purpose of benefiting BOUNCYHOP and benefiting the Defendants individually.

112.    Defendants, jointly and severally, used BOUNCYHOP as a shell and abused the company form in order to perpetrate the fraud and damages against Plaintiffs outlined above.

113.    ALJIBOURI, CHEBAT, and other Defendants claiming a membership role in BOUNCYHOP exercised complete domination of their company with regard to the wrongful acts outlined above.  Defendants used this domination of the company to commit the fraudulent scheme against the Plaintiffs and knowingly caused the Plaintiffs damages.

114.    ALJIBOURI, CHEBAT, and other Defendants claiming a membership role in BOUNCYHOP organized and formed BOUNCYHOP with the intent of using

BOUNCYHOP to attempt to shield them from liability knowing that their scheme was illegal and fraudulent.

115.    The Plaintiffs' damages flow directly from the Defendants', joint and several, use of BOUNCYHOP for their personal gain.

116.    BOUNCYHOP is an alter ego of the individual Defendants, and this Court must pierce the corporate veil to establish personal liability for the Defendants' actions.

117.    Therefore, Plaintiffs demand judgment against Defendants, jointly and severally, in their individual capacities for compensatory and punitive damages, attorney fees, costs of this action, and other relief as the Court may deem just and proper.

## Eighth Count [Common Law Unfair Competition]

118.    The Plaintiffs repeat, reiterate, reallege, and incorporate by reference paragraphs 1 through 117, both inclusive as if fully set forth herein.

119.    The Defendants have willfully, maliciously, and in bad faith attempted to pass off Plaintiffs' products as their own, and in doing so are attempting to, and are, falsely deceiving the public and business marketplace to the substantial detriment of the Plaintiffs' business, reputation, and good will.

120.    The Defendants' misappropriation of the Plaintiffs' names and marks have caused actual confusion and are likely to cause confusion and to deceive the public as to the Defendants' relationship with Plaintiffs.

121.    The Defendants actions are causing damages to the Plaintiffs including dilution of the Plaintiffs' distinctive quality and trademarks, which are known in the industry.

122.    The aforesaid acts of the Defendants constitute unfair competition against Plaintiffs under common law.

123.    That based upon the foregoing, the Plaintiffs demand Judgment against the Defendants, jointly and severally, as follows:

a.    Enjoining and restraining the Defendants from directly, or indirectly, utilizing the Plaintiffs' names, products, Zoom Blowers, Pogo Bounce House, Tentandtable.com and Partytentsdirect.com, the yellow and black design of air blowers, or any similar variations of any such words or names similar to the Plaintiffs' name(s), and other use of Plaintiffs' other trademarks yet undiscovered;

b.    Awarding the Plaintiffs compensatory and punitive damages;

c.    Awarding the Plaintiffs costs of suit, including reasonable attorneys' fees; and

d.    Awarding such legal or equitable relief as the Court may deem proper.

**Ninth Count [Common Law Tortious Interference]**

124.    The Plaintiffs repeat, reiterate, reallege, and incorporate by reference paragraphs 1 through 123, both inclusive as if fully set forth herein.

125.    With the knowledge of the business and personal relationships that Plaintiffs have within the industry, within interstate commerce, with suppliers, with customers, the business community, the general public, and others, the Defendants, jointly and severally, have consciously and unlawfully engaged in their aforesaid

conduct, undertaken to interfere with and induce an interference with these relationships and the Plaintiffs.

126.    The Defendants, jointly and severally, have unjustifiably interfered with the longstanding and significant business relationships that exist between Plaintiffs and third parties.

127.    That the Defendants' actions have been undertaken, without legal justification or excuse, and with actual malice, and the intent to harm the Plaintiffs' business reputation and good will.

128.    That as a direct and proximate result of the Defendants' tortious interference in contracts and business relationships, the Plaintiffs have and will suffer immediate and irreparable harm and damage for which it has no adequate remedy at law.

129.    That based upon the foregoing, the Plaintiffs demand Judgment against the Defendants, jointly and severally, as follows:

        a.    Enjoining and restraining the Defendants from directly, or indirectly, utilizing the Plaintiffs' names, products, Zoom Blowers, Pogo Bounce House, Tentandtable.com and Partytentsdirect.com, the yellow and black design of air blowers, or any similar variations of any such words or names similar to the Plaintiffs' name(s), and other use of Plaintiffs' other trademarks yet undiscovered;

        b.    Awarding the Plaintiffs compensatory and punitive damages;

        c.    Awarding the Plaintiffs costs of suit, including reasonable attorneys' fees; and

    d.    Awarding such legal or equitable relief as the Court may deem proper.

## Tenth Count [Common Law Trademark Infringement]

130.    The Plaintiffs repeat, reiterate, reallege, and incorporate by reference paragraphs 1 through 129, both inclusive as if fully set forth herein.

131.    Restatement of the Law of Torts and common law defines and designates protections for trademarks, trade names, and liability for the infringement of same.

132.    The Defendants, jointly and severally, have infringed on Plaintiffs' names and trademarks in that Defendants have without a privilege to do so, in their business, and in connection with his published websites, utilized the names and trademarks of Plaintiffs.

133.    Defendants have used designations which are identical with or confusingly similar to the Plaintiffs' trade names and trademarks.

134.    The Defendants have infringed upon Plaintiffs' names and trademarks without privilege, authorization, or otherwise, and by affixing the marks and names to their websites, and by utilizing their websites to advertise and disseminate same to the public.

135.    That based upon the foregoing, the Plaintiffs demand Judgment against the Defendants, jointly and severally, as follows:

    a.    Enjoining and restraining the Defendants from directly, or indirectly, utilizing the Plaintiffs' names, products, Zoom Blowers, Pogo Bounce House, Tentandtable.com and Partytentsdirect.com, the yellow and black design of air blowers, or any similar variations of

      any such words or names similar to the Plaintiffs' name(s), and other use of Plaintiffs' other trademarks yet undiscovered;

b.    Awarding the Plaintiffs compensatory and punitive damages;

c.    Awarding the Plaintiffs costs of suit, including reasonable attorneys' fees; and

d.    Awarding such legal or equitable relief as the Court may deem proper.

## Eleventh Count [Conversion]

136.    The Plaintiffs repeat, reiterate, reallege, and incorporate by reference paragraphs 1 through 135, both inclusive as if fully set forth herein.

137.    The Defendants, jointly and severally, have converted the Plaintiffs' property and proprietary information unlawfully by taking it for themselves and selling it for a profit.

138.    The Defendants' actions have interfered with the Plaintiffs' right of possession to Plaintiffs' property, which has caused and will continue to cause damages.

139.    Plaintiffs' damages include those for which there is no adequate remedy at law.

140.    Plaintiffs are entitled to a preliminary injunction enjoining and restraining the Defendants from using, accessing, moving, selling, or otherwise disposing of Plaintiffs' property as well as the illegally gotten gains from the past use of Plaintiffs' property.

141.    Defendants should be required to return all of Plaintiffs' property, and disgorge all profits obtained from the wrongful taking and conversion of Plaintiffs' property.

142.    That based upon the foregoing, the Plaintiffs demand Judgment against the Defendants, jointly and severally, as follows:

      a.    Enjoining and restraining the Defendants from directly, or indirectly, utilizing the Plaintiffs' names, products, Zoom Blowers, Pogo Bounce House, Tentandtable.com and Partytentsdirect.com, the yellow and black design of air blowers, or any similar variations of any such words or names similar to the Plaintiffs' name(s), and other use of Plaintiffs' other trademarks yet undiscovered;

      b.    Awarding the Plaintiffs compensatory and punitive damages;

      c.    Awarding the Plaintiffs costs of suit, including reasonable attorneys' fees; and

      d.    Awarding such legal or equitable relief as the Court may deem proper.

**Twelfth Count [Fraud]**

143.    The Plaintiffs repeat, reiterate, reallege, and incorporate by reference paragraphs 1 through 142, both inclusive as if fully set forth herein.

144.    ALJIBOURI concealed his wrongful actions and thefts from the Plaintiffs, including concealing his diversion of time and Plaintiffs' property while developing, forming and operating BOUNCYHOP with the remaining Defendants.

145.    The Defendants, jointly and severally, concealed the development of BOUNCYHOP and the sale of the Plaintiffs' products for their own benefit and to the direct detriment of the Plaintiffs.

146.    The concealment of Defendants' actions, and the actions themselves, constitute a series of acts and material omissions done for the purpose of inflicting damages upon Plaintiffs.

147.    Plaintiffs relied, to their detriment, on the material omissions of ALJIBOURI and the remaining Defendants, by keeping ALJIBOURI under its employment and trusting him with Plaintiffs' property.

148.    Additional evidence of the Defendants' fraud and concealment is under the exclusive knowledge and control of Defendants.

149.    Defendants fraud has caused and will continue to cause Plaintiffs irreparable harm, for which there is no adequate remedy at law.

150.    Plaintiffs have suffered, and will continue to suffer damages to Plaintiffs' business including lost customers, lost profits, dilution of Plaintiffs' names and trademarks, and damage to Plaintiffs' goodwill.

151.    That based upon the foregoing, the Plaintiffs demand Judgment against the Defendants, jointly and severally, as follows:

   a.    Enjoining and restraining the Defendants from directly, or indirectly, utilizing the Plaintiffs' names, products, Zoom Blowers, Pogo Bounce House, Tentandtable.com and Partytentsdirect.com, the yellow and black design of air blowers, or any similar variations of any such words or names similar to the Plaintiffs' name(s), and other use of Plaintiffs' other trademarks yet undiscovered;

b.    Awarding the Plaintiffs compensatory and punitive damages;

c.    Awarding the Plaintiffs costs of suit, including reasonable attorneys' fees; and

d.    Awarding such legal or equitable relief as the Court may deem proper.

**Thirteenth Count [Trade Dress Infringement]**

152.    The Plaintiffs repeat, reiterate, reallege, and incorporate by reference paragraphs 1 through 151, both inclusive as if fully set forth herein.

153.    The Plaintiffs' yellow and black color design is inherently distinctive, nonfunctional and has acquired distinctiveness.

154.    Defendants' advertisement, promotion and sale of Plaintiffs' products and similarly looking products is intended and likely to confuse and deceive the customers and the public as to the origin and affiliation of Defendants' infringement.

155.    Defendants' acts, jointly and severally, constitute false designation of origin and false and misleading descriptions and representations of fact, in violation of 15 U.S.C. § 1125(a).

156.    Upon information and belief, Defendants' acts and misappropriation was willful and intentional and resulted in substantial profits.

157.    Defendants' unlawful and unauthorized acts have caused damages to the Plaintiffs.

158.    That based upon the foregoing, the Plaintiffs demand Judgment against the Defendants, jointly and severally, as follows:

a.  Enjoining and restraining the Defendants from directly, or indirectly, utilizing the Plaintiffs' names, products, Zoom Blowers, Pogo Bounce House, Tentandtable.com and Partytentsdirect.com, the yellow and black design of air blowers, or any similar variations of any such words or names similar to the Plaintiffs' name(s), and other use of Plaintiffs' other trademarks yet undiscovered;

b.  Awarding the Plaintiffs compensatory and punitive damages;

c.  Awarding the Plaintiffs costs of suit, including reasonable attorneys' fees; and

d.  Awarding such legal or equitable relief as the Court may deem proper.

**Fourteenth Count [Common Law Trade Dress Infringement]**

159.    The Plaintiffs repeat, reiterate, reallege, and incorporate by reference paragraphs 1 through 158, both inclusive as if fully set forth herein.

160.    The black and yellow color scheme and appearance of Plaintiffs' blowers are recognized by consumers and the public as indicating the source of the Plaintiffs' products.

161.    The Plaintiffs' color scheme and appearance have acquired secondary meaning in the marketplace and constitute a protected trade dress owned exclusively by Plaintiffs under common law.

162.    The advertising and sale by the Defendants are likely to cause confusion as to the source of the products and was done intentionally by the Defendants in order to cause such confusion.

163.    Defendants' unlawful and unauthorized sales were done with disregard for the Plaintiffs' rights and constitute trade dress infringement.

164.    Upon information and belief, Defendants' acts and misappropriation was willful and intentional and resulted in substantial profits.

165.    Defendants' unlawful and unauthorized acts have caused damages to the Plaintiffs.

166.    That based upon the foregoing, the Plaintiffs demand Judgment against the Defendants, jointly and severally, as follows:

      a.    Enjoining and restraining the Defendants from directly, or indirectly, utilizing the Plaintiffs' names, products, Zoom Blowers, Pogo Bounce House, Tentandtable.com and Partytentsdirect.com, the yellow and black design of air blowers, or any similar variations of any such words or names similar to the Plaintiffs' name(s), and other use of Plaintiffs' other trademarks yet undiscovered;

      b.    Awarding the Plaintiffs compensatory and punitive damages;

      c.    Awarding the Plaintiffs costs of suit, including reasonable attorneys' fees; and

      d.    Awarding such legal and equitable relief as the Court may deem proper.

### Fifteenth Count [Replevin]

167.    The Plaintiffs repeat, reiterate, reallege, and incorporate by reference paragraphs 1 through 166, both inclusive as if fully set forth herein.

168.    It is believed that the Defendants have, and continue to maintain possession of, property belonging to the Plaintiffs.

169.    The Defendants have no right, title or interest in the Plaintiffs' property and products and have obtained same illegally and without any authority.

170.    Therefore, Plaintiffs' right to their property is superior to any purported claim of the Defendants and must be returned to Plaintiffs.

171.    Defendants' continued possession of Plaintiffs' property is causing irreparable harm and damage, including the waste and dissipation of Plaintiffs' property.

172.    Therefore, Plaintiffs demand immediate return and delivery of their Property, under NY CPLR Article 71, rules of Replevin and Federal Rules of Civil Procedure 64, along with compensatory and punitive damages, the Plaintiffs' costs of suit, including reasonable attorneys' fees; and such legal and equitable relief as the Court may deem proper

173.    Plaintiffs demand a jury trial of all issues.

**WHEREFORE,** the Plaintiffs request judgment from the Court as outlined in the above counts and causes of action, all to be awarded with costs and attorney fees, and for such other and further relief as the Court may deem necessary, appropriate and just under the circumstances.

DATED:    Buffalo, New York
          January 26, 2022

                                        **WEBSTER SZANYI LLP**
                                        Attorneys for Plaintiffs


                                        By:    _s/ Mark E. Guglielmi_
                                               Mark E. Guglielmi
                                               424 Main Street, Suite 1400
                                               Buffalo, New York 14202
                                               (716) 842-2800
                                               mguglielmi@websterszanyi.com

# VERIFICATION

STATE OF NEW YORK    )
                     ) ss.
COUNTY OF ERIE  )


      Mark Slater being duly sworn, deposes and says that he is the  Officer and

Authorized Agent_____  of __Zoom Blowers, LLC_ and Tentandtable.com, LLC___

named in the within entitled action; that he has read the foregoing Complaint and knows

the contents thereof; and that the same is true to his own knowledge, except as to the

matters therein stated to be alleged upon information and belief, and to those matters

he believes it to be true.  Deponent further says that the reason this verification is made

by deponent and not Zoom Blowers, LLC and Tentandtable.com, LLC  is because the

said Plaintiffs_____  are each a Limited Liability Company and the grounds of

deponent's belief as to all matters in the said Complaint not stated upon his/her own

knowledge are investigations which deponent has caused to be made concerning the

subject matter of this Complaint and information acquired by deponent in the course of

his/her duties as an officer of said Company and from the books and papers of said

Company.

                          By:_____
                                  Mark Slater

Sworn to before me this
25 day of January, 2022.

_____
        Notary Public

                    THERESE M. GRECO
             Notary Public, State of New York
                 No. 01GR6191496
               Qualified in Erie County
          Commission Expires Aug. 18, 2024